UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHELOTTA BRIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CREX/PANGEA REAL ESTATE, ) <br> ) <br> Defendant. ) | Case No. 1:20-cv-00853-TWP-MJD |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant CREX/Pangea Real Estate ("CREX") ([Filing No. 44](#)).  Plaintiff Shelotta Bright ("Bright") filed this lawsuit after she was terminated from her job at CREX.  Bright has asserted claims for race and sex discrimination, retaliatory termination, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").  ([Filing No. 1](#).)  CREX has moved for summary judgment, asserting Bright's termination was neither discriminatory nor retaliatory, that there was no hostile work environment, and that there are no disputed issues of material fact.  For the following reasons, the Court **grants in part and denies in part** CREX's Motion.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Bright as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

CREX is an Equal Opportunity Employer and maintains an Employee Handbook that sets forth its equal employment opportunity policy as well as relevant policies prohibiting

discrimination based on sex and race, or any other protected category, as well as retaliation. CREX oversees and manages several apartment communities in Indianapolis, Indiana. (Filing No. 46-3 at ¶ 2.)  To aid in this work, CREX hires individuals to serve as Property Managers over each apartment community.  *Id.*  Bright was hired by CREX on August 13, 2018.  (Filing No. 46-1, 35:14-22.) She was hired as the Property Manager of CREX's Vineyards and Prairies apartment complexes located in Indianapolis. (*Id.*; Filing No. 46-2, 42:20-21.) The Property Manager position was a salaried position. (Filing No. 46-2, 27:18-28:8.) Bright's supervisor was Jesus Parra ("Parra"), Regional Manager at CREX.  (Filing No. 46-1, 35:17-36:5.) Parra was the sole decision maker with authority for hiring, work assignments, raises, performance reviews, and terminations. (Filing No. 45 at 3.)

During her time at CREX, Bright reported several issues to Parra.  First, Senior Property Manager, Delana Watson ("Watson"), would repeatedly use the words "nigga" and "bitch" during biweekly property manager meetings.  (Filing No. 48-1.)  Bright found this language to be offensive and derogatory and reported it to Parra in September 2018, January 2019, and again in March 2019.  *Id.* at ¶ 10.  Similarly, Bright complained in January and March of 2019 that another employee, Susan Flinchem (Flinchem"), was harassing her.  *Id.*  According to Bright, none of these claims were investigated.

In May 2019, Parra conducted a mid-year, annual review of Bright. (Filing No. 46-3.) During that evaluation, Parra gave Bright a positive performance review.  *Id.*  However, during the summer of 2019, Bright was reminded several times that she should be splitting her work time between the two properties she managed.  *Id.*

On August 12, 2019, Bright contacted Flinchem to request that she send another employee, Edgar Benitez ("Benitez"), to assist her at the Vineyards property because another staff member

had called in absent. (Filing No. 45 at 8.) At Bright's request, Benitez spent the day at the Vineyards property. *Id.* During the day, Benitez could hear Bright laughing in her office. (Filing No. 46-1, 197:16-18.) As later reported by Benitez and recorded by security cameras, Bright was watching a television show on her cell phone. (Filing No. 45 at 8.) Bright also asked Benitez if he had seen the show she was watching—Orange is the New Black—and showed him a clip. *Id.* Benitez later reported that there were very few appointments and showings at the Vineyards property that day. (Filing No. 46-4.) Bright remained at the Vineyards property all day and did not visit the Prairies property. (Filing No. 46-1, 172:9-25.)

In September 2019, Bright again asked for Benitez to assist at the Vineyards property. *Id.* At that time, Benitez reported what occurred on August 12, 2019 to Parra. *Id.* Parra investigated Benitez's allegations, including meeting with Bright on October 4, 2019 to discuss her behavior. (Filing No. 46-3.) Bright admitted that she was watching television in her office on August 12, 2019. *Id.* Through his investigation, Parra concluded that Bright had violated CREX's Standards of Conduct by misusing both her own and Benitez's work time. *Id.* Parra terminated Bright the same day. *Id.*

On March 16, 2020, Bright filed this action alleging that CREX discriminated against her in violation of Title VII and Section 1981, as well as retaliated against her and created a hostile work environment. (Filing No. 1.) On May 11, 2021, CREX, under Federal Rule of Civil Procedure 56, moved for summary judgment on all claims brought against it. (Filing No. 44.)

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or

genuinely in dispute, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. *Id.* at 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* at 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. *Id.* at 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. *Id.* at 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.   DISCUSSION

Bright asserts in her Complaint that CREX racially discriminated against her and terminated her employment due to her race and sex in violation of Title VII and Section 1981. (Filing No. 1.) She also alleges a hostile work environment and that CREX wrongfully terminated

her in retaliation for engaging in protected activity. CREX moves for summary judgment on all three claims, maintaining that each of Bright's claims fail as a matter of law. (Filing No. 44.) The Court will address each claim in turn.

### A.     Race and Sex Discrimination Claim

#### 1.     Title VII

Bright alleges that, in violation of Title VII, she was discriminated against because of her race, Black, and sex, female. (Filing No. 1.) Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In discrimination cases, "[w]hen a defendant moves for summary judgment, the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed fact caused the discharge or other adverse employment action." *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020), *reh'g denied* (July 31, 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 982 F.3d 887, 894 (7th Cir. 2018)). Whether a plaintiff offers direct or circumstantial evidence of discrimination, the Seventh Circuit made clear in *Ortiz v. Werner Enters., Inc.* that "all evidence belongs in a single pile and must be evaluated as a whole." 834 F.3d 760, 766 (7th Cir. 2016). When reviewing the facts under the framework established by *Ortiz*, the evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* at 765.

One way of proving employment discrimination under Title VII remains the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> The familiar *McDonnell Douglas* approach requires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to

>offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was pretext.

*Purtue*, 963 F.3d at 601-02. To make a prima facie case under *McDonnell Douglas*, a plaintiff must show: (1) she belongs to a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee outside of her protected class received better treatment from her employer. *Marshall v. Indiana Dep't of Correction*, 973 F.3d 789, 791-92 (7th Cir. 2020). As both Bright and CREX appear to utilize the *McDonnell Douglas* framework, the Court will analyze their arguments under it.

CREX presents several arguments supporting its request for summary judgment on Bright's discrimination claim. CREX argues that Bright cannot establish a *prima facie* case of race or sex discrimination. (Filing No. 45 at 14.) Specifically, CREX argues that Bright has not established the second and forth prongs under *McDonnell Douglas*: that she was meeting CREX's legitimate expectations and that a similarly situated non-Black or male employee was treated more favorably. *Id.* The Court will address each argument individually.

### a. Prong 2: CREX's Legitimate Expectations

First, CREX argues that Bright was not meeting its legitimate expectations on August 12, 2019. (Filing No. 45 at 15.) CREX contends that the record supports that Bright "misused and falsified her own work time and misused the work time of Edgar Benitez." *Id.* at 15-16. CREX points to its Standards of Conduct, which includes an expectation that working time is for work and that "misuse or falsification of that work time can lead to discipline up to and including termination." *Id.* at 16. CREX asserts that Plaintiff was aware of the policy, bound by it, and agreed that the disciplinary policy was reasonable. *Id.*

In response, Bright argues that several factual questions remain regarding whether she was meeting her employer's legitimate expectations. (Filing No. 48 at 6.) Specifically, Bright contends

6

that she did not misuse her work time and performed all required duties on August 12, 2019. *Id.* In support of these contentions, Bright cites to her own affidavit and pages of a deposition that were not included in the exhibits attached to her response. *Id.* Bright's own opinion regarding her performance, however, is not enough to create a genuine issue of material fact. *See Dickerson v. Bd. of Trs. of Cmty. Co. Dist. No. 522*, 657 F.3d 595, 603 (7th Cir. 2011) (An employee's "own evaluation of his work cannot be imputed to [the employer] and is insufficient to permit his case to survive past summary judgment.").

The proper inquiry requires looking at Bright's job performance through the eyes of CREX on August 12, 2019. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 574 (7th Cir. 2021). The question is not whether CREX's opinion regarding Bright's work on August 12, 2019 was *right* but whether it was *honest*. *See Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Bright has presented no evidence to question the honesty or reliability of CREX's evaluation of her performance on August 12, 2019.

CREX had clear Standards of Conduct regarding misuse of work time. (Filing No. 45 at 5-6.) After Parra investigated and spoke with Bright, he concluded that her actions amounted to a violation of the Standards of Conduct. (Filing No. 46-3.) A legitimate expectation of employee conduct was clearly established, and Bright has not demonstrated that she was meeting CREX's performance expectations on August 12, 2019. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328 (7th Cir. 2002) ("If a plaintiff fails to demonstrate that she was meeting her employer's legitimate employment expectations at the time of her termination, the employer may not be put to the burden of stating the reasons for [her] termination.") (internal quotations omitted). And it also does not matter that Bright was meeting CREX's legitimate expectations before August 12, 2019. *See id.* at 329 (quoting *Karazanos v. Navistart Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th

Cir. 1991)) ("[T]he issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.'"); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken.").

Bright has pointed to no evidence establishing that her actions on August 12, 2019 met the legitimate expectations of CREX. Thus, the Court finds no genuine issue of material fact in dispute about Bright's failure to meet CREX's employment expectations.

### b. Prong 4: Similarly Situated Employee Outside Protected Class

Next, Bright argues that she has identified a similarly situated employee outside of her protected class: Benitez. (Filing No. 48 at 7-8.) Although a comparator need not be identically positioned, "similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects.'" *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006)). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Johnson*, 892 F.3d at 895. Bright argues that because both she and Benitez were subject to the same rules and reported to the same supervisor, they were similarly situated. (Filing No. 48 at 7-8.)

Here, the Court is unpersuaded by Bright's arguments. Unlike Bright, Benitez was not a Property Manager, but rather a floating employee. (Filing No. 46-3.) Also, Benitez is paid hourly, not salaried like Bright. *Id.* But most importantly, the allegations that Benitez watched television during work hours—which are only supported by Bright's affidavit—are different from the

behavior which led to Bright's termination. According to Parra, Bright was not terminated solely for watching television; she was terminated for requesting the assistance of another employee when his assistance was not needed. *Id.* There is no evidence that Benitez ever participated in similar behavior and, thus, is not an adequate comparator.

Viewing the evidence in the light most favorable to Bright, the Court finds that she has not raised a triable issue as to whether her termination was based on her race, has not demonstrated that her race was a motivating factor in her termination, and has failed the *prima facie* test for determining discrimination under *McDonnell Douglas*. Even after considering whether the totality of the evidence submitted demonstrates discrimination or discriminatory intent, the designated evidence shows that Bright's race or sex played no role in her termination.

Therefore, the Court **grants** CREX summary judgment on Bright's Title VII race and sex discrimination claim.

### 2. Section 1981

Section 1981 provides equal rights under the law and states that, "All persons within the jurisdictions of the United States shall have the same right . . . to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

Like Title VII discrimination claims, to succeed on a race discrimination claim under Section 1981, plaintiffs may proceed under the direct or indirect (*i.e., McDonnell Douglas*) method. *Dandy v. United Parcel Serv. Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). As previously discussed, Bright has proceeded under the indirect method, so the Court applies the *McDonnell Douglas* test for discrimination claims under Title VII. *Hague*, 436 F.3d at 822 (quoting *Bennett*

*v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002)) ("The same standards governing liability under Title VII apply to § 1981 claims.") (internal citation omitted).

In a Section 1981 claim, "a plaintiff bears the burden of showing that race was a but-for cause of [her] injury. And, while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020); *see Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1262-63 (7th Cir. 1990) ("To be actionable, racial prejudice must be a but-for cause."). The heightened standard of proof, established by *Comcast Corp.*, for plaintiffs bringing discrimination claims under Section 1981 means that Bright is obliged to plead and demonstrate that but for her race, CREX would not have terminated her employment.

As previously discussed in the Title VII context, Bright fails the second and fourth prongs of the *McDonnell Douglas* burden shifting framework to determine racial discrimination. After careful review of the summary judgment record, the Court finds that the collective evidence proffered by Bright, taken as a whole, would not allow a reasonable factfinder to conclude that Bright's race was the "but for" cause of her termination.

Therefore, the Court **grants** CREX summary judgment on Bright's claim of racial discrimination under Section 1981.

**B.    Retaliation Claim**

Bright also alleges that CREX retaliated against her for engaging in protected activity when she made verbal complaints of race discrimination, sex discrimination , and retaliation—consistent with CREX's policies—to her supervisor. (Filing No. 1, Filing No. 48-1). The court reviews Title VII and Section 1981 retaliation claims under the same framework. As with employment

10

discrimination cases, the court looks to determine whether the evidence presented would allow a reasonable factfinder to decide that the plaintiff's race or sex "caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Title VII prohibits any employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) (quoting 42 U.S.C. § 2000e-3(a)). Discrimination of this nature is referred to as "retaliation." *Id.*

A plaintiff seeking to prove a *prima facie* case of retaliation under Title VII "must establish that: 1) she engaged in statutorily-protected expression; 2) she suffered an adverse action by her employer; and 3) there is a causal link between the protected expression and the adverse action." *O'Donnell v. Caine Weiner Co., LLC*, 935 F.3d 549, 553 (7th Cir. 2019) (internal quotations omitted). In the Title VII retaliation context, causation can be established by circumstantial evidence, which includes, for example, "suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016). Additionally, the plaintiff can point to "any other evidence from which an inference of discriminatory intent might be drawn." *Id.* at 1019. An employee engages in a Title VII protected activity when, for example, she files a claim with the Equal Employment Opportunity Commission ("EEOC") or when she submits a complaint to her employer, so long as the complaint is tailored to discrimination based on one (or more) of Title VII's protected classes. *Tomanovich*, 457 F.3d at 663.

Here, CREX argues that Bright is unable to establish a causal link between her protected activities and the adverse actions. (Filing No. 45 at 23.) Specifically, CREX argues that Bright

11

has failed to designate any evidence showing that Parra, the person who terminated Bright, "harbor[ed] any retaliatory intent." *Id.* at 23-24.

In response, Bright alleges that she has "developed evidence to show pretext" and refers to arguments she made regarding discrimination. (Filing No. 48 at 11-12.) These arguments, however, are once again supported by citations to deposition excerpts and a deposition exhibit that were not attached to Bright's response[1]. *Id.* at 9-10. Without providing support for her assertions, Bright has not factually supported the existence of a causal link. As the Seventh Circuit has held, the primary question for a retaliation claim should always be, "[d]oes the record contain sufficient evidence to permit a reasonable factfinder to conclude that retaliatory motive caused the discharge?" *Igasaki v. Illinois Dep't of Fin & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)); *see also Ortiz*, 834 F.3d at 765. The record does not contain sufficient evidence to permit a reasonable factfinder to conclude that retaliatory motive caused Bright's termination. Accordingly, summary judgment is **granted** on Bright's retaliation claims.

C.      **Hostile Work Environment Claim**

Finally, Bright alleges that she was subjected to a hostile work environment. (Filing No. 1.) Specifically, Bright alleges that she complained on several occasions regarding her co-worker, Watson, using the words "nigga" and "bitch" during biweekly meetings (Filing No. 48-1) at a minimum of nine times over the course of 13 months. Bright argues that "CREX was required to take some action to stop Watson's conduct upon learning of it." [2] (Filing No. 48 at 12.)

---

[1] Bright cites to pages 42, 50, 51, 94 and 95 of her Exhibit 2, none of which were included in the exhibit. Bright also references deposition exhibit 35 which was not attached to her response.

[2] CREX disputes that Bright ever made it aware of Watson's use of a racial epithets or had any knowledge that Watson used the offensive language (Filing No. 46-3). However, when reviewing a summary judgment motion, the Court must view the record in the light favorable to Bright as the nonmoving party. Therefore, the Court concludes that Watson made the racial epithets and Bright reported the offensive language.

12

To make a claim for discrimination based on a hostile work environment, the plaintiff must show that (1) she was subject to unwelcome harassment; (2) the harassment was based on her race or sex; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). The conduct alleged must be "sufficiently severe or pervasive to alter the conditions of employment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). Whether conduct meets this bar depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id.* Sometimes the Seventh Circuit phrases the test differently, "looking instead for evidence that the workplace was both subjectively and objectively offensive—either in lieu of the first prong—that the employee was subject to unwelcome harassment—or the third prong —whether the harassment was severe or pervasive enough to rise to the level of a hostile work environment." *Johnson*, 892 F.3d at 900 (citing *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 n.6 (7th Cir. 2016), *cert. denied,* ––– U.S. –––, 137 S.Ct. 1614, 197 L.Ed.2d 708 (2017)).

"Offhand comments, isolated incidents, and simply teasing do not rise to the level of conduct that alters the terms and conditions or employment." *Passanati v. Cook Cty*, 689 F.3d 655, 667 (7th Cir. 2012). Additionally, comments that were not made directly to a plaintiff carry less weight in the evaluation of a hostile environment claim. *Russell v. Bd. of Trustees of Univ. of Illinois at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) ("When harassing statements are directed at someone other than the plaintiff, the impact of such second hand harassment is obviously not as great as the impact of harassment directed at the plaintiff.").

CREX argues that the alleged conduct is not objectively severe or pervasive enough to create a hostile work environment. (Filing No. 50 at 18.) CREX points out that Watson, the co-worker using the inappropriate language, was a Black female, like Bright, and that her use of these words was never directed to or referenced Bright. *Id.* CREX also points out that these statements were only made at management meetings, equating roughly nine occurrences over a 13-month time frame. *Id.*

Crediting the evidence in the light most favorable to Bright, as the Court must do, Bright found Watson's language both objectively and subjectively hostile and abusive. An objectively hostile environment is an environment which a reasonable person would find to be hostile or abusive. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993). To determine whether a plaintiff meets this standard, courts consider all the circumstances, including the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or a mere offensive utterance, and whether it reasonably interferes with the employee's work performance. *Id.* at 23. As to the subjective requirement, all Bright has to establish is that she perceived the environment to be hostile or abusive. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 695 (7th Cir. 2001).

Here, Senior Property Manager, Watson repeatedly used the words "nigga" and "bitch" over the course of 13 months during at least nine property manager meetings. When referring to other employees, rather than using a name, Watson would refer to that person with the "n-word". (Filing No. 46-1 at 66). Bright found Watson's language offensive, derogatory, and humiliating (Filing No. 48-1 at 1). As directed by the employee handbook, Bright complained to Parra about Watson's use of "nigga" and "bitch" in August or September 2018, on January 21, 2019, and March 29, 209. *Id* at 2. She informed Parra that she found the language disrespectful, and degrading. (Filing No. 46-1 at 68.) Bright contends that management failed to take any corrective action

against Watson, and Watson continued using the language "nigga' and "bitch" in biweekly property manager meetings even after her complaints to her supervisor. (Filing No. 48-1 at 2.) Also, on March 29, 2019, Bright contacted the EEOC regarding her complaints of race discrimination, sex discrimination and retaliation[3]. (Filing No. 48-1 at 2.)

While the evidence in the record demonstrates that this language was never directed at Bright, a reasonable trier of fact could conclude that the repeated racial comments in Bright's presence were severe or pervasive enough to create a hostile work environment. Regardless of the race of a person making repeated racial slurs, Watson's racial slurs are offensive, humiliating, and hostile behaviors that should have been addressed. Although the impact of second hand harassment is not as great as the impact of harassment directed at a plaintiff, that Watson was never reprimanded and continued the same offensive behaviors for several months is significant. Bright contends the conduct was so severe or pervasive that it altered the conditions of her employment relationship such that she contacted the EEOC, and later filed a charge of discrimination which included allegation of a hostile work environment. In light of all these circumstances, a jury might well find that a reasonable person in Bright's position would find repeated use of the words "nigga" and "bitch" over the course of 13 months during at least nine meetings, racially hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (applying objective standard to hostile environment claims). Accordingly, Bright's hostile work environment claim **survives** summary judgment.

---

[3] Bright affirms in her Declaration that she contacted the E.E.O.C. in March 2019. (Filing No. 48-1 at 2, ¶20.) The "Corrected Copy" of her E.E.O.C. Charge of Discrimination is dated October 18, 2019 and her Right to Sue Letter was issued on March 10, 2020. (Filing No. 1-1).

**D.     Punitive Damages Claim**

CREX also argues that Bright's claim for punitive damages should not survive summary judgment. (Filing No. 45 at 32.) Punitive damages are available when a plaintiff shows a defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "[E]stablishing the requisite 'malice or reckless indifference' depends not on the egregiousness of the employer's misconduct, but instead on the 'employer's knowledge that it may be acting in violation of federal law.'" *Gile*, 213 F.3d at 375 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999)). The United States Supreme Court set forth a three-part framework in *Kolstad* for determining whether an award of punitive damages is proper. First, punitive damages are proper when the "employer discriminates in the face of a perceived risk that its actions will violate federal law." *Gile*, 213 F.3d at 375. Second, the plaintiff must impute liability to the employer. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001). "The plaintiff must demonstrate that the employees who discriminated against him are managerial agents acting within the scope of their employment." *Id.* Third, even if prongs one and two are established, an employer can escape punitive liability by showing "it engaged in good faith efforts to implement an antidiscrimination policy." *Id.*

The Court agrees with CREX that it engaged in good faith efforts to implement an anti-discrimination policy as evidenced by its handbook. Moreover, Bright has presented no argument and designated no evidence to support punitive damages. Instead, it appears that she has abandoned this claim. Accordingly, summary judgment is **granted** as to the punitive damages claim.

### IV.     CONCLUSION

For the reasons discussed above, CREX's Motion for Summary Judgment (Filing No. 44) is **GRANTED in part and DENIED in part**. Summary judgment is granted with respect to all

claims other than Bright's claim for hostile work environment. In construing the record in Bright's favor, as the Court must do, the designated evidence and the factual disputes between the parties preclude entry of summary judgment on Bright's hostile work environment claim.

The parties are directed to contact the Magistrate Judge to schedule a settlement conference prior to the January 19, 2022 final pretrial conference.

**SO ORDERED**.

Date:  11/19/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Aaron J. Williamson
WILLIAMSON CIVIL LAW, LLC
aaron.williamson@wcivillaw.com

R. Anthony Prather
BARNES & THORNBURG, LLP (Indianapolis)
tony.prather@btlaw.com

Thomas C Payne
BARNES & THORNBURG LLP
Thomas.Payne@btlaw.com